ORGANIZED SECURITY LIFE INSURANCE CO. *v.* Claude E. MUNYON

5-5005                                   446 S. W. 2d 233

Opinion delivered October 27, 1969

450

*Rose, Meek, House, Barron, Nash & Williamson,* for appellant.

*James R. Hale,* for appellee.

JOHN A. FOGLEMAN, Justice. This appeal questions the correctness of action of the trial court in denying appellant's motion for summary judgment and granting appellee's. Appellee Munyon commenced the action, seeking to recover weekly total disability payments under a policy issued him by American Alliance Life Insurance Co. He alleged that: Munyon's claims were paid by American Alliance through November 1, 1967; thereafter, American Alliance was declared insolvent by the Insurance Commissioner while it was indebted to appellee on account of his total disability; on February 13, 1968, appellant assumed, agreed to pay and became liable for performance of all obigations imposed upon American Alliance under said policy, as evidenced by a Certificate of Assumption executed and delivered to

Munyon. Appellee sought to recover for benefits accrued after the date of the assumption agreement, statutory penalty and attorney's fees.

The policy and Certificate of Assumption were exhibited with the complaint. The latter document contained a statement that Organized Security assumed appellee's American Alliance policy, together with amendments thereto and agreed to carry out the obligations of American Alliance.

Appellant, by answer, admitted that the policy exhibited with the complaint was a true copy of that policy, that appellee became totally disabled after January 9, 1967, and that his claim for benefits was honored by the issuing company through November 1, 1967. It denied that the Certificate of Assumption was anything other than an assumption of obligations under the policy for claims arising after the assumption date and denied liability for disability benefits accruing after February 13, 1968. Appellant stated, in its original answer, that inasmuch as the disability of Munyon appeared to be total and permanent, no useful purpose could be served by continued payment of premiums and tendered the return of two premiums paid by Munyon. A reinsurance agreement between the Insurance Commissioner, as Receiver for American Alliance, and Organized Security was exhibited with the answer. Under this agreement the latter company agreed to reinsure all outstanding policies of the type issued to appellee in accordance with their terms and to assume all liabilities of the former company under these policies, excluding all claims incurred under such policies before the "assumption of risk time and date." Appellant also agreed to assume and carry out the several obligations of American Alliance expressed by and contained in the policies and to hold American Alliance harmless from any and all obligations in said policies arising on or after the effective date of the contract which was February 13, 1968.

Appellee Munyon moved for summary judgment. His affidavit in support of his motion also exhibited a copy of the Certificate of Assumption, which he stated was issued to him, together with a letter transmitting it. He stated that he was totally disabled within the meaning of the policy since December 28, 1966, and that he had filed a claim for disability benefits beginning February 13, 1968, with appellant, but that the claim had been refused.

Thereafter, appellant filed a motion for leave to amend its answer, a response to appellee's motion for summary judgment and its own motion for summary judgment. The proposed amendment to the answer contained a denial that appellee was disabled and alleged that if any disability existed, it was the result of a diabetic condition specifically excluded under the American Alliance policy. A supporting affidavit was made by appellant's attorney of record. Therein he stated that the reinsurance agreement attached to appellant's original answer was a true and correct copy of the original agreement and that an exhibited "Waiver Rider" was attached to the original policy, but was not included with the policy attached to appellee's affidavit. He asserted, in the affidavit, that when total permanent disability commences, the loss occurs at that time and may be considered a single claim, so that no cause of action was stated by appellee. The waiver rider stated an agreement that the terms of the policy should not apply to any disability caused, directly or indirectly, wholly or in part, by diabetes and any disease or disorder caused directly or indirectly from diabetes. It bore signatures by the president and assistant secretary of American Alliance, but no acceptance by appellee, although there was a blank space indicated for signature indicating acceptance.

Appellee then filed an amendment to the motion for summary judgment together with his affidavit that the waiver rider was not attached to or made a part of

his policy at the time of its issuance and delivery, and that there was no agreement that such a rider was to be made a part of his policy. He exhibited his application,[1] his receipt for the policy, his proof of loss executed February 6, 1968, his attending physician's statement dated May 22, 1967, a letter from American Alliance dated May 26, 1967, transmitting a check for six weeks' disability payments and requesting a claimant's statement for each month, his physician's statement dated February 6, 1968, a letter from appellant dated April 1, 1968, and vouchers showing payment of a total of $2,200 at the rate of $50 per week by American Alliance on appellee's claim for disability. Later appellee filed another affidavit exhibiting a statement by his attending physician dated January 21, 1969. No further controverting affidavits or other matter was filed by appellant.

Each of the physician's statements mentioned stated that the nature of appellee's sickness was: (1) acute myocardial infarction (2) arteriosclerosis (3) diabetes (or diabetes with retinitis) (4) blindness, left eye can only discern light, right eye—20/400, cannot read. Under the heading "Remarks" the last statement included the following:

"His total disability can be due either to his heart disease (Cardiac Disease, coronary insufficiency and arteriosclerosis, class III-D,) or to blindness. His heart disease could have developed either on account of Diabetes or not on account of it."

The letter from appellant to appellee dated April 1, 1968, read as follows:

"Enclosed you will find a claimant's statement form DI100CF which is to be filled out by you on

---

[1]Appellee stated in this application that he had diabetes, that he had been treated for this condition about 1959 by the same physician who made reports to the insurance companies and that he consulted this doctor about once a year.

the side marked claimant's statement and by your doctor on the side for the attending physician's statement. We would like to have as complete an account of your disability as possible for our records here.

Also, I am enclosing a few supplementary proof of loss form DI100CFS one to be completed each month and returned to us.

This company took over the policies and any liability under the policies commencing with the date of February 13, 1968. Any prior claims will be paid by the Deputy Receiver, Mr. W. W. Barton of Hot Springs. As soon as we receive the completed forms, we will send you a check for the amount due from the date of February 13th on."

Appellant relies on two points for reversal. They are:

I

"AS A MATTER OF LAW DEFENDANT IS NOT LIABLE UNDER THE REINSURANCE AGREEMENT DATED FEBRUARY 13, 1968, FOR PLAINTIFF'S CLAIM FOR TOTAL DISABILITY SINCE PLAINTIFF'S CLAIM WAS A CLAIM INCURRED BY AMERICAN ALLIANCE PRIOR TO FEBRUARY 13, 1968.

II

GENUINE ISSUES OF MATERIAL FACT WERE RAISED BY THE PLEADINGS, EXHIBITS, AND AFFIDAVITS, WHICH COULD NOT BE DISPOSED OF BY SUMMARY JUDGMENT."

In support of the first point, appellant argues that the exclusion of all claims, incurred under American Alliance policies before the assumption of risk time and

date,[2] left it without liability, as a claim and loss arising December 28, 1966, and a liability of the issuing insurance company.

Assuming, without deciding, that the exclusionary clause in the reinsurance agreement is subject to the construction urged by appellant, it is also subject to a construction making it liable for the monthly payments to appellee and others similarly situated as they become due. Appellant can hardly say that it was unaware of appellee's claim. The reinsurance agreement required that the Insurance Commissioner deliver to appellant all of American Alliance Life Insurance Company's books and records pertaining to its policies and policyholders and its card file. Appellant promptly forwarded its Certificate of Assumption to appellee. In this Certificate, appellant agreed ''to carry out the obligatiqns of the American Alliance Life Insurance Company under individual policies issued under the terms of such policies.'' (Policy No. 6-H-115)

Appellant's letter of April 1, 1968, clearly recognizes that appellant was aware of appellee's claim and acknowledged that it had taken ''over the policies and any liability under the policies commencing with the date of February 13, 1968.'' Appellee was also advised that, when the completed forms requested were received, appellant would send ''a check for the amount due from the date of February 13th on.'' It is clear that appellant did not then construe its reinsurance agreement as it now does. Thereafter, appellee paid at least two quarterly premiums which were returned to appellee with appellant's original answer filed December 10, 1968.

Even where a contract is ambiguous in its terms, the parties will be bound to the construction which they themselves have placed upon it. *Arlington Hotel Co.* v. *Rector,* 124 Ark. 90, 186 S. W. 622.

In support of the second point, appellant argues

---

[2]February 13, 1968

that there is a genuine issue of fact as to whether the waiver rider mentioned in and attached to the affidavit of its attorney of record in this case was attached to and a part of the insurance policy issued by American Alliance. It might well be correct in this respect if its response and motion were supported as required by statute, even though appellee by affidavit categorically denied appellant's assertion in this respect. The only support for this assertion was that of appellant's attorney. He did not state in his affidavit, when he became attorney for appellant, that he had personal knowledge of the attachment of the waiver rider or, if he did, how he acquired this knowledge. An affidavit by an attorney is not to be considered under summary judgment procedures when the affidavits do not show that the attorney had personal knowledge of the facts set out and that he was competent to testify to them. Ark. Stat. Ann. § 29-211(e) (Supp. 1967); *Mercantile National Bank* v. *Franklin Life Ins. Co.,* 248 F. 2d 57 (5th Cir. 1957); *Subin* v. *Goldsmith,* 224 F. 2d 753 (2nd Cir. 1955).

It must be affirmatively shown, or appear from statements contained in any affidavit supporting or opposing a summary judgment, that it is based upon personal knowledge of the affiant, that the facts stated therein would be admissible in evidence and that the affiant is a witness competent to state these facts in evidence. *Zampos* v. *United States Smelting, Refining & Mining Co.,* 206 F. 2d 171 (10th Cir. 1953); *Marion County Co-op Assn.* v. *Carnation Co.,* 114 F. Supp. 58 (W. D. Ark. 1953), aff'd., 214 F. 2d 557 (8th Cir. 1954); *Young* v. *Atlantic Mutual Insurance Co.,* 38 F. R. D. 416 (E. D Penn. 1965); *Walpert* v. *Bart,* 280 F. Supp. 1006 (D. C. Md. 1967), aff'd., 390 F. 2d 877; *Couillard* v. *Charles T. Miller Hospital,* 253 Minn. 418, 92 N. W. 2d 96 (1958). The affidavit of an attorney of record is not prohibited, but it is subject to the same tests as those of any other affiant. Here, the attorney's affidavit is deficient. It does not indicate in any way how he acquired his knowedge of, or information about, the rider

or its attachment to the policy. There was no error in finding that there was no issue of fact on this point. Furthermore, the copy of the rider attached to the deposition is neither a sworn or certified copy as required by statute. Ark. Stat. Ann. § 29-211(e) (Supp. 1967).

Since we find no merit in either point, the judgment is affirmed. Appellee requests allowance of an attorney's fee in addition to the $500 allowance by the trial court. We allow an additional $500.

JONES, J., dissents.

J. FRED JONES, Justice, dissenting. I do not agree with the majority opinion in this case. The facts are simple. Mr. Munyon purchased an insurance policy from American Alliance Insurance Company. He became disabled and drew some benefits under the policy. American Alliance became insolvent and its obligations were assumed by Organized Security Life Insurance Company, hereinafter called the company. The company refused to pay benefits under the policy and Mr. Munyon filed suit. The company admitted the issuance of the policy but denied Munyon's disability as well as its own liability. Mr. Munyon filed a motion for summary judgment supported by affidavit and his policy was made an exhibit. The attorney for the company filed a counter affidavit stating that there was a rider attached to the original policy when it was issued and a copy of the rider was attached to the counter affidavit. The effect of the rider was to exclude from coverage under the policy disability caused by diabetes. Mr. Munyon was suffering from diabetes.

The question before this court is not whether Mr. Munyon was entitled to recover under his insurance contract The question before us is whether his motion for a summary judgment should have been granted. The question here is not whether Mr. Munyon should have won his lawsuit, the question is whether it should have been tried on its merits.

The summary judgment is such an attractive device for dispensing with litigation it is easy to lose sight of its real and intended purpose and it is easy to erroneously consider affidavits in determining the issues rather than in determining whether there are any issues to be tried. I am of the opinion that the trial court fell into such error in the case at bar and that the error has now been compounded by the majority opinion of this court.

Mr. Munyon attached a copy of the policy as an exhibit to his original complaint and affidavit in support of his motion for summary judgment, but no rider was attached and none was mentioned. John H. Haley is the attorney of record for the appellant insurance company in this case and the pertinent part of his counter affidavit is as follows:

"John H. Haley, being first duly sworn states as follows: 3. The policy attached to the affidavit of the plaintiff does not include the waiver rider which was attached to the original policy. A copy of said waiver rider is attached to the affidavit as an exhibit."

Mr. Munyon made a counter affidavit stating that the rider was not attached to the policy when he received it. If the rider was attached to the policy when issued, and was a part of the insurance contract, there is no question that there was a justiciable issue as to liability under the contract. If the rider was not a part of the original contract, then the appellant and Mr. Haley were subject to the penalties prescribed in Ark. Stat. Ann. § 29-211 (g) (Repl. 1962) which is as follows:

"Affidavits Made in Bad Faith. Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party

employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney's fees, and any offending party, or attorney may be adjudged guilty of contempt.''

The majority seem to recognize the validity of appellant's argument that there was a genuine issue of fact to be tried if it were not for the weakness the majority detects in the form of Haley's affidavit. The majority points out that Haley did not state in his affidavit just when he became attorney for appellant, and that he did not state that he had personal knowledge that the rider was attached to the policy or how he acquired such knowledge if he actually had it. The majority then cites *Mercantile National Bank* v. *Franklin Life Ins. Co.*, 248 F. 2d 57 (5th Cir. 1957) for the proposition that affidavits by an attorney are not to be considered under summary judgment procedures when the affidavits do not show that the attorney had personal knowledge of the facts set out and that he was competent to testify to them. I fail to read such conclusion from the *Franklin* case, and I can do no better than quote the court's own language as follows:

"There were no affidavits on file, except that the attorneys for rival claimants appended their own affidavits to some of the pleadings."

The majority states that it must be affirmatively shown, or appear from statements contained in any affidavit supporting or opposing a summary judgment, that it is based upon personal knowledge of the affiant, that the facts stated therein would be admissible in evidence and that the affiant is a witness competent to state these facts in evidence. The majority cite *Zampos* v. *United States Smelting, Refining & Mining Co.*, 206 F. 2d 171 (10th Cir. 1953) in support of this statement. In *Zampos* the litigation was over damage to a mine caused by flooding. The affidavit of the attorney in that

case merely detailed statements made to him by others who had seen the flood, and the court held that his affidavit was nothing more than hearsay.

I am not critical of the general rules of law stated by the majority as related to the facts in the cases cited in support of the rules, but in my opinion they simply do not apply to the facts in the case at bar.

In the first place affidavits are not required at all in support of a motion for a summary judgment. Ark. Stat. Ann. § 29-211 (a), (b) and (c) (Repl. 1962 and Supp. 1967) are as follows:

> "(a)  A party seeking to recover upon a claim, counterclaim, or crossclaim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move *with or without supporting affidavits,* for a summary judgment in his favor upon all or any part thereof.
>
> (b)  A party against whom a claim, counterclaim, or crossclaim is asserted or a declaratory judgment is sought may, at any time, move *with or without supporting affidavits* for a summary judgment in his favor as to all or any part thereof.
>
> (c)  The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing *may* serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, *if any,* show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of li-

ability alone although there is a genuine issue as to the amount of damages." (Emphasis supplied.)

When the parties elect to file affidavits in support or in opposition to a motion for summary judgment, it was never intended by the rule that the courts should simply examine the affidavits for technical flaws and render judgment on the affidavit most perfect in form. The purpose of the affidavit is to assist the trial court in separating the truth from fiction and separating the facts as they are alleged from the facts as they are.

On a motion for summary judgment the trial court should only be concerned with what material facts exist without substantial controversy and what material facts are actually in good faith controverted. Where an attorney files a counter affidavit on behalf of his client, the trial court should accept the affidavit at its face value and should not concern itself with how long the attorney had represented his client. It is my opinion that on a motion for summary judgment the court should examine all the pleadings and evidence, as well as affidavits, for substance rather than form. The trial court should first accept the affidavit and then examine the affiant, at the hearing on the motion, if he deems such procedure necessary in reaching the primary object of determining whether any material facts are in controversy. As a matter of fact such procedure is definitely indicated in Ark. Stat. Ann. § 29-211 (d) (Repl. 1962) which provides as follows:

"(d) If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying

the facts that appear without substantial contro-
versy, including the extent to which the amount of
damages or other relief is not in controversy, and
directing such further proceedings in the action as
are just. Upon the trial of the action the facts so
specified shall be deemed established, and the trial
shall be conducted accordingly."

Now as to the form of affidavits which constitutes
the nucleus of the majority opinion. As already pointed
out, affidavits are not required at all in support of, or
in opposition to, motions for summary judgment. But
when they *are* employed, Ark. Stat. Ann. § 29-211 (e)
(Supp. 1967) provides as follows:

"Supporting and opposing affidavits shall be made
on personal knowledge, shall set forth such facts as
would be admissible in evidence, and shall show af-
firmatively that the affiant is competent to testify to
the matters stated therein. Sworn or certified copies
of all papers or parts thereof referred to in an af-
fidavit shall be attached thereto or served there-
with. The court may permit affidavits to be supple-
mented or opposed by depositions, answers to in-
terrogatories, or by further affidavits. When a mo-
tion for summary judgment is made and supported
as provided in this rule, an adverse party may not
rest upon the mere allegations or denials of his
pleading, but his response, by affidavits or as other-
wise provided in this rule, must set forth specific
facts showing that there is a genuine issue for trial.
If he does not so respond, summary judgment, if
appropriate, shall be entered against him."

Subsection (e) is directed to the valid substance of
a bona fide affidavit and not to rigidity of their preci-
sion in form. This is evident from subsequent subsection
(f) of § 29-211 which is as follows:

"Should it *appear* from the affidavits of a party

*oppising the motion* that he cannot for reasons
stated present by affidavits facts essential to justify
his opposition, the court may refuse the application
for judgment or may order a continuance to permit
affidavits to be obtained or depositions to be taken
or discovery to be had or may make such order as
is just." (Emphasis supplied.)

Now as to the counter affidavit in the case at bar:
After being duly sworn, Mr. Haley stated:

"The policy attached to the affidavit of the plain-
tiff does not include the waiver rider which was
attached to the original policy. A copy of said
waiver rider is attached to the affidavit as an ex-
hibit."

Does the statute require that the affidavit be made on
personal knowledge or does it require, as the majority
seems to hold, that the affiant must state in his affidavit
that he has personal knowledge of the truth of the mat-
ters he swears to be true? The facts stated by Mr. Haley
in his affidavit were not stated "according to his best
knowledge and belief," they were stated and sworn to
as absolute facts and they refer to information, con-
tained in instruments exclusively in the hands and pos-
session of the opposing adversary.

In *Austin Theater, Inc.* v. *Warner Bros. Pictures,
Inc.,* 139 F. Supp. 727, the complaint alleged a national
conspiracy in violation of the federal anti-trust law,
which was injuring the plaintiff's motion picture dis-
tribution business. The defendant moved for summary
judgment and by supporting affidavit alleged that there
was no direct competition between its theaters and those
of the plaintiff. In denying the motion for summary
judgment, the court said:

"Movants also emphasize the fact that plaintiff's
attorney's affidavits are not made upon personal
knowledge. This otherwise important feature is not

controlling in the present case because it appears that plaintiff's case, in the final analysis, will depend upon evidence obtained from or through the movants and other defendants, who would have peculiar, if not exclusive, knowledge of the alleged conspiracy and its workings.''

In *Alvado* v. *General Motors Corp.*, 229 F. 2d 408, 411, the court said:

''That argument disregards this important factor: The affidavit relates facts peculiarly within the knowledge of defendants' officials; indeed it recites that Seaton is familiar with and has personal knowledge of the facts. In such circumstances (especially where as here, such a matter as good faith, or the like is crucial), the granting of a summary judgment is error. For the opponent of the motion is thereby deprived of the opportunity to cross-examine the movant's officials, and is prevented from having a trial court assisted in its evaluation of their credibility by observing their demeanor while they testify. See *Colby* v. *Klune*, 178 F. 2d 872; *Bozant* v. *Bank of New York*, 156 F. 2d 787, 790; *Subin* v. *Goldsmith*, 224 F. 2d 753, 767; *Alabama Great Southern R. Co.* v. *Louisville and Nashville R. Co.*, 224 F. 2d 1, 5.''

In *Robinson* v. *Waterman Steamship Co.*, 8 F. R. D. 155, the plaintiff asserted a claim for damages under the death act for the death of the decedent which was allegedly caused by the negligence of the defendants. Jurisdiction was based on diversity of citizenship, and the defendant made a motion for summary judgment. The court denied the motion for summary judgment and said:

''The plaintiff's objection to the entry of summary judgment is based solely upon the affidavit of counsel. The affidavit does not meet the requirements of the rule because *it is obvious that the affiant is*

*not a competent witness. This failure of the plaintiff to adequately meet or controvert the testimony of the defendants' affidavit is not fatal, however, to the plaintiff's objection."* (Emphasis supplied.)

In *Pfeiffer* v. *Frank,* 19 F. R. D. 15, the defendant made a motion for summary judgment which was denied. The court said:

"The fact that the opposing affidavits are not based entirely upon personal knowledge is not justification for granting summary judgment, in view of the circumstances disclosed. See opinion of Frank, Circuit Judge, in *Alvado* v. *General Motors Corp.,* 2 Cir. 229 F. 2d 408."

In the case at bar the counter affidavit of defendant's attorney states that a rider was attached to the insurance policy. The insurance policy, including the rider, if there was one, is obviously in the possession of the movant and so it would be necessary for the defendant to obtain evidence from the movant in order to prove that a waiver or a rider was a part of the insurance contract, and he should have an opportunity to do so by cross-examination. Certainly the alleged rider would be admissible in evidence and affiant's failure to affirmatively *state* in his affidavit that he is competent to testify should not be fatal to appellant's objections to the summary judgment in this case.

In the case of *Bull* v. *Manning,* 245 Ark. 545, 433 S. W. 2d 145, the court said:

"A motion for summary judgment is similar to a motion for directed verdict, in that the testimony must be viewed in the light most favorable to the party resisting the motion, and if there is any doubt whether a factual question exists, motion for summary judgment should be denied. *Van Dalsen* v. *Inman,* 238 Ark. 237, 379 S. W. 2d 261; *Keely* v. *Lum-*

berman's Mutual Ins. Co., 239 Ark. 766, 394 S. W. 2d 629.''

In the case of *Deltic Farm & Timber Co.* v. *Manning,* 239 Ark. 264, 389 S. W. 2d 435, the court said:

"A motion for summary judgment is an extreme remedy and the burden of demonstrating the non-existence of a genuine fact issue is upon the party moving for the summary judgment. *Wirges* v. *Hawkins,* 238 Ark. 100, 378 S. W. 2d 646.''

In the *Deltic* case, *supra,* the court went on to say:

"Further, where the evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypothesis might reasonably be drawn and reasonable men might differ, then a motion for a summary judgment is not proper. *Winter Park Telephone Co.* v. *Southern Bell Telephone & Telegraph Co.,* 181 F. 2d 341 (5th Cir. 1950).''

In *Wittlin* v. *Giacalone,* 154 F. 2d 20, the court said:

". . . [I]t is well established that one who moves for summary judgment has the burden of demonstrating clearly the absence of any genuine issue of fact, and that any doubt as to the existence of such an issue is resolved against the movant. The courts are quite critical of the papers presented by the moving party, but not of the opposing papers. Indeed, Professor Moore says in his work on Federal Practice Under the New Federal Rules:

'Even if the pleading of the party opposing the motion is defective and does not state a sufficient claim or defense, the motion will be denied, if the opposing papers show a genuine issue of fact.' See *Curry* v. *Mackenzie,* 239 N. Y. 267, 146 N. W. 375.''

In *United States* v. *General Ry. Signal Co.*, 110 F. Supp. 422, the court said

> "* * * To the McHugh affidavit are attached photostatic copies of papers obtained from the files of the defendants and they are offered as evidence of the existence of a genuine issue of material fact. During the oral argument movant's counsel suggested that the exhibits so offered were hearsay and not properly before the court. The court for the purpose of the motion accepts the source and validity of the exhibits as stated in plaintiff's affidavit.
>
> There is no denial or attack by any affidavit filed by movant as to the correctness of those exhibits or as to the propriety of their possession by plaintiff. * * * Upon a trial, of course, the proof of their source would be made and the surrounding circumstances would be related by witnesses having actual knowledge of the facts. This is not a trial."

It is true that in the affidavit in support of appellee's amended motion for summary judgment the appellee denies the "waiver rider" was ever attached to the policy, and that if the "waiver rider" does exist, it is the unilateral act of appellant.

The purpose of Rule 56 (e) of F. R. C. P., § 29-211, *supra,* is to require both the moving and opposing parties to a motion for summary judgment to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. See *Robin Construction Co.* v. *U. S.*, 345 F. 2d 610 (p. 614-615). In the instant case the appellant has not relied on the pleading, but has offered proof to show that there is a genuine fact issue. A lawsuit should not be tried by affidavit when there has been evidence introduced which raises a doubt as to whether or not a genuine fact issue exists. It appears to me that the majority have directed their attention so closely to the wording of the opposing affidavit,

that they have lost sight of the issue involved. That is, ''whether the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'

As I view this case it boils down to one simple issue. Mr. Munyon says that he is entitled to recover on the policy he exhibits. The company says that the policy exhibited by Mr. Munyon is not the entire contract. It says that there was a rider attached to the policy when it was issued to Mr. Munyon and that under the entire contract, including the rider, Mr. Munyon is not entitled to recover on the contract. Mr. Munyon says the rider was not included and the company says it was.

I would reverse the judgment of the trial court and remand this case for proper trial.